# WHEELING.

## WILLIAMSON v. HAYS.

Submitted January 30, 1885.—Decided April 11, 1885.

1. To entitle any person to obtain a writ of error or appeal from a judgment, he must be both a party to the case and be aggrieved by the judgment.  (p. 613.)

2. In proceedings instituted in the county court to establish a ferry or in other cases before the county court, where there are no formal parties defendants, when the proceedings are instituted, the county court ought not to permit any person to be made a party defendant or contestant, so as to give him a right to obtain a writ of error to the judgment of the court, if such person have no interest in the subject-matter before the court except such interest as he has in common with all other members of the community.  (p. 615.)

3. The county court should in such cases permit any one to become a contestant and party to the proceeding, so as to give him a right to obtain a writ of error to the judgment, if such person has a peculiar interest in the controversy different from that of all other members of the community, though this interest be not a vested right, which could be infringed by the judgment of the court, and which might entitle him to pecuniary compensation.  (p. 616.)

4. Upon the application of a party to the county court for the establishment of a new ferry across a stream, where there is a ferry already established in close proximity to the site of the proposed ferry, the county court should permit the proprietor of the old ferry to be made a party contestant; and if this be done, such proprietor is entitled to apply for a writ of error to the judgment of the county court establishing the new ferry.  (p. 618.)

5. In such a case an important enquiry to be made by the county court before establishing such new ferry is, whether the travel and business across the stream is or is not sufficient to support reasonably well two ferries, as the result of such enquiry must have much weight in determining the question, whether the new ferry should or should not be established.  (p. 619.)

GREEN, JUDGE, furnishes the following statement of the case :

A. R. Williamson after having posted notice at the front door of the court house of Tyler county and in three other public places in Union district in said county for more than

77

three weeks of his intention so to do made an application in writing to the county court of said county for the establishment of a ferry from Williamson's landing in Union district in said county across the Ohio river to the town of Matamoras, in the State of Ohio. The court on January 16, 1882, appointed three commissioners to view the same and report to the court the advantages and disadvantages, which in their opinion will result as well to individuals as to the public from the proposed ferry, the facts and circumstances that may be useful in enabling the court to determine, whether such ferry ought to be established or not. These commissioners being first sworn reported on February 9, 1882, that they considered the proposed landing as practicable as most other ferry-landings on the Ohio river; that to persons going to Matamoras in Ohio from the country immediately back of this landing, or lying below it further down the river, it would save a distance of one mile and one-third of a mile in going and returning; but that during low water the ferry-boats can not come nearer the West Virginia shore than two hundred yards, though they were told, when this was the case, the river could be forded by a horse. There is a public road running to this landing. The establishment of the ferry would be an advantage to A. R. Williamson and a disadvantage to Alexander Hays, the proprietor of a ferry across the Ohio a short distance above this proposed ferry. They submit with their report a plat of the river and these two ferries and the roads leading to them and of the town of Matamoras on the Ohio river on the Ohio side. By this map it appears, that the town of Matamoras lies between the old or Hays's ferry and the proposed ferry occupying almost the whole distance between them, the old or Hays's ferry near the upper part of the town and the proposed ferry near the lower part of the town. There is a public road running back into the country at right angles to the river from each of these ferry-landings, and a road up and down the river nearly parallel and about a quarter of a mile from it, which intersects these two roads. The road leading to the old or Hays's ferry is known as the Moore-road, and the one leading to Williamson's landing the route of the proposed ferry is known as Zion road. From Williamson's proposed landing to the point, where in

low water a ferry-boat could come, there is a plank walk some two hundred yards in length.

Alexander Hays, the owner of the upper or old ferry, appeared to oppose the establishment of this ferry; and the case was continued till the July term. At that time the contestant, Alexander Hays, and the applicant, A R. Williamson, each introduced eleven witnesses before the court, who were examined; but their statements I deem it unnecessary to give. After the argument of the case the court rejected the application of A. R. Williamson. He objected to this judgment and moved for a new trial, which motion the court overruled; and he thereupon took a bill of exceptions, which sets out the statements made by each of the eleven witnesses and then proceeds as follows:

" The court further certifies that the following facts were in their opinion proven on the trial of said application:

" First. It was proven that the amount of travel coming in on the Zion road and the road leading up the river was greater than the travel coming in on the Moore road and the road leading down the river, and that persons coming in on said first two mentioned roads going to Matamoras would save from one and one-third to one and one-half miles travel in going to and returning from Matamoras by crossing at the proposed ferry instead of Hays's (the ferry already established.)

" Second. It was proven that the ferry already established at Hays's landing, and owned and conducted by Alexander Hays, was and is abundantly able to accommodate the entire travelling public wishing to cross the river near Matamoras, and had accommodated the same, when the amount of travel was as large again as it is now; Mr. Hays however stating that on public days he had had sometimes to hire help. . And it was also proven that said ferry was well attended and kept.

" Third. It was proven that the passage could be made more quickly at Hays's ferry than at the ferry proposed to be established.

" Fourth. It was proven that at either Hays's landing or Williamson's landing boats could be brought to the roads leading thereto no difference how high the river was.

" Fifth. It was proven that at any stage of low water the shore could be reached and the crossing made without diffi-

culty from Hays's landing, and it was also proven that for some time during the summer or fall of 1881 Williamson's landing could not be so reached, but that a board-walk had to be built to the wing-dam some distance out into the river.

"Sixth. It was proven that Hays's ferry was oftener obstructed by ice than the proposed ferry would be, and that during windy weather the water at Hays's ferry was rougher, being deeper than at the proposed ferry, but it was also proven that the waves were no more dangerous at Hays's ferry during windy weather than at the proposed ferry.

"Whereupon the court gave judgment against the establishment of the aforesaid ferry; and the said A. R. Williamson by his attorney thereupon moved the court to set aside said judgment and grant him a new trial of this cause, on the ground that the same is contrary to the law and the evidence, which motion was overruled by the court; to which opinion of the court in overruling said motion the said A. R. Williamson excepted and tendered this his bill of exceptions, and prays that the same may be signed, sealed and made part of the record in this cause, which is accordingly done.

"F. E. BOYLES, *President.* [L. S.]
"JOHN B. GORRELL, *Com'r.* [L. S.]"

These facts were fair deductions from the statements of these eleven witnesses and the report of the commissioners, and they state about all that was proven by this evidence.

From this judgment of the county court A. R. Williamson obtained what is really a writ of error granted upon his petition assigning errors in the record of the county court in this case filed with the petition, which was addressed to the judge of the circuit court of Tyler county. The circuit court of Tyler on the presentation of this petition did on April 15, 1883, grant to said A. R. Williamson what is styled in this order of the court an appeal on his giving a bond as required by law in the penalty of $200.00. On December 6, 1883, the circuit court of Tyler county after hearing the arguments of counsel for appellant Williamson and the contestant Hays, who had been served with notice of this appeal, reversed the judgment of the county court of Tyler and proceeding to make such order, as the county court ought to have made, established the ferry, which the applicant had asked for and

ordered him to keep at the ferry a ferry-boat of specified capacity and two skiffs and one hand at least to assist him and fixed the rates to be charged for ferrying.

Alexander Hays, the contestant, filed a bill of exception to this ruling of the court, which was signed by the judge; and a writ of error and *supersedeas* was awarded to him by a a judge of this Court on February 24, 1884.

*W. J. Boreman* and *J. N. McKnight* for plaintiff in error.

*Stealey & Engle* for defendant in error.

GREEN, JUDGE:

The first question presented by the record is: Did Alexander Hays have a right to apply for a writ of error to this court from the decision of the circuit court? If he did not have the right, we must quash this writ of error as improvidently awarded. It is well settled, that a person, who is not a party to the proceedings in the court below, in which the judgment complained of was rendered, can not obtain a writ of error from this Court to the judgment of the court below. The statute, which gives the right to obtain a writ of error from this Court, is thus worded: "A party to a controversy in any circuit court may obtain from the Supreme Court of Appeals a writ of error to a judgment of such circuit court in the following cases," (specifying them.) Acts of 1882 chapter 157 section 1. It would hardly seem necessary to cite authorities to sustain the proposition above laid down. But plain as is the language of our present statute and of all others granting to the court of appeals the power to grant writs of error, yet it has been frequently necessary to dismiss writs of error, because they had been awarded to persons, who though interested in the judgment of the court below were not parties to the controversy. It is true the party entitled to writ of error need not have been originally a party to the controversy, when the proceeding was first instituted in the court below. It is sufficient that he becomes a party to the controversy at any time during the progress of the case below. Many cases might be referred to as based on this. If, for instance, a chancery suit is instituted by a judgment-creditor to subject the land of his debtor to the payment of his

judgment-lien, and the court by an interlocutory order directs a commissioner to convene before him all other judgment-creditors of the defendant and ascertain their liens and their priorities, such a decree converts the cause into a creditors' suit, and all persons presenting their judgments before the commissioner and having them audited become parties to the cause, and any one of them may take an appeal from the decree of the circuit court prejudicial to his rights.

Many other cases might be referred to involving the same principle. But we will confine ourselves to those cases, which most strongly resemble the case before us. In nearly all the proceedings before a county court as now organized in this State there are, when the proceedings are instituted, no formal parties-defendant to the proceedings. In cases of contempt there is at first no formal plaintiff. In most other cases there are at first no formal defendants; as for instance in the establishment of roads; the regulation of roads; the establishment and regulation of bridges and of public land-ings and of furnaces and of mills; the probate of wills and the appointment and qualification of personal representatives, guardians, executors and committees and the settlement of their accounts. In all these cases a writ of error is allowed to the judgment or action of the county court to the circuit court. (See Acts of 1881 chapter 5 section 47.) The mode of reviewing these cases is called in this statute an appeal; but this is obviously a mere blunder, as will fully appear from section 14 of chapter 152 of Acts of 1882, where the mode of conducting these appeals is minutely prescribed; and it is obvious, that the circuit court is required to review the errors of law in such cases committed by the county court by writ of error erroneously called an appeal.' For the case in the circuit court is to be heard only on a transcript of the record from the county court and not upon new evidence in the circuit court; and as the evidence in the county court in such cases is parol, it is evident, that this can not be a re-hearing of the case in the circuit court; and therefore it can not be an appeal, if any regard is paid to the meaning of the word appeal.

Now by whom is this judgment of the county court in all these cases to be taken up by writ of error to the circuit

court? It is obvious, that it must be taken up either by the plaintiffs in the proceeding or by the defendants. But if the judgment happens to be in favor of the plaintiff, by whom did the statute contemplate it might be taken up? It is clear from the words of the statute, that writs of error were intended to be allowed in some cases, where, for instance, roads were regulated, as by ordering the closing of gates upon a public road, or where a ferry was improperly established; and, we have seen, they can be taken up only by a party to the record. It is clear therefore that in such cases they may be taken up by a person, who has made himself a party to the record by appearing before the court and resisting what is asked for by the plaintiff in the proceedings. All this seems clear enough; and it is equally clear, that no matter how much interest a person may have in the proceedings, if he does not appear before the county court and make himself a party, he can not obtain a writ of error. It is true, there need be no formality in the entries on the order-book of the county court making him a party; but this order-book or the proceedings before the county court must show, that he appeared and took part in the controversy before the county court; and if this appears from the record in any manner, it will suffice to make him a party to the controversy in the county court and entitle him to apply for a writ of error. But to entitle a person to be thus made a party to the controversy, he must have some other interest in the subject-matter of the controversy than that, which he has in common with every other member of the community; and if he has been admitted as a party to the controversy, when he has no other interest in the subject-matter, the court above ought not to grant him a writ of error. But if it should do so, as he has a right to apply for such a writ of error by reason of his appearing by the record to be a party to the controversy, on the hearing of the case in the appellate court it could not dismiss the writ of error as improvidently awarded, but it would affirm the judgment of the court below, as no judgment it could render would be regarded as so prejudicial to his interest as to justify the Court in reversing the judgment of the court below. These views are fully sustained by the following authorities : (*Miller* v. *Rose*, 21 W. Va. 291; *Supervisors of Culpepper* v.

*Gorril*, 20 Grat. 519; *Sayers* v. *Grimes*, 1 H. & M. 404; *Wingfield* v. *Crenshaw*, 3 H. & M. 245; *Dunlop* v. *Commonwealth*, 2 Call. 284.)

It remains then to determine in such controversies before the county court, where there are no parties-defendants at the institution of the proceedings, what kind of interest in the subject of the controversy will entitle a person to be made a party to the controversy while pending before the county court and thus entitle him, if error be committed to his prejudice, to a writ of error. Of course no one on either an appeal or writ of error can have a case reversed in the appellate court, merely because there was error in the proceedings of the court below. It must affirmatively appear, that the appellant or plaintiff in error was prejudiced by the erroneous action of the court below. This Court has acted on this principle and affirmed so many decrees or judgments though erroneous, because they were not prejudicial to the appellant or plaintiff in error, that it is unnecessary to refer to cases. It is done at almost every term of this Court.

The question is, what kind of interest entitles one to be made a party to such controversy before a county court, which, if prejudiced by the action of the county court, entitles such party to a writ of error and a reversal of the judgment of the county court? Must it be a vested interest, for which, if interfered with even under a judgment of the county court by the granting of what is asked by the applicant, would entitle such person to a pecuniary compensation; or will it suffice, that the interest, which may be prejudiced by the granting of the application asked, though not a vested interest or one entitling the injured party to any pecuniary compensation, if it be prejudiced by the action of the court, is nevertheless an interest peculiar to the person asking to be made a party to the controversy and not merely an interest, which he has in common with all the other members of the community. It seems to me, an interest of this last character will suffice to give the person a right to be made a party to such controversy before the county court and a right to a writ of error and a reversal of the action of the court, if its action be erroneous and prejudicial to this peculiar though not vested interest. If this be not so, then in numerous cases

named in the statute as cases, which may be taken up from the county court after final action in it to the circuit court by appeal, as the statute says, but by writ of error, as was clearly meant, there could no person be found, who could take up such class of cases, and thus the statute would in all such cases be nugatory.

Suppose, for instance, a county court had authorized the placing of a gate across a public road, when it established the road, and the gate was authorized to be placed there because deemed by the county court of very great advantage to a number of persons living near where this gate was to be placed, in order that they might turn their cattle into this public road to get water from a run crossing the public road, and which gate would prevent the cattle when so turned out from wandering a great distance on the road. An application is made to the county court to remove this gate. Should not one of these persons be allowed to make himself a party to this proceeding and to resist the removing of this gate; and if the county court should remove it, should he not be permitted to have their action reviewed by the circuit court on writ of error; and if the record showed, that it had been proven, that very few of the general public ever used this road, and that thus the public were to a very small extent incommoded by the continuance of this gate, might not the circuit court reverse the decision at its discretion? It seems to me, that to give any effect to a portion of section forty-seven of chapter five of Acts of 1881, we must hold, that such a party having such peculiar interest, though not a vested interest, should be permitted to be made a party to such controversy and should be allowed to take a writ of error to the circuit court. For if he could not, surely nobody could ever in such case take a writ of error; for no one could in such a case have a vested right, which would be invaded by an order of the county court removing such gate, or retracting its authority that it might be placed across the public road; and yet the third paragraph of section forty-seven of chapter five of Acts of 1881, authorizes an appeal or writ of error in such a case.

I have found no direct authority sustaining this view; but it obviously met the approval of this Court in *Miller* v. *Rose*,

78

21 W. Va. 293. The case was similar to the one above sup-
posed, and Judge Snyder in delivering the opinion of the
Court, on page 293 says: "If, however, they (the plaintiffs in
error) had shown affirmatively to the Court or if the fact had
appeared upon the record in any satisfactory manner, that
the plaintiffs in error were the owners or tenants of the lands,
through which the said road passed, and the gates had been
erected for their use, convenience and benefit, then, I am of
opinion, they might under a proper construction of the stat-
ute have properly made themselves parties to the proceed-
ing by appearance in the county court and thus entitled
themselves to prosecute a writ of error." The principle re-
ally involved in this quotation is, that persons in cases of the
kind we are considering may make themselves parties to the
controversy in the county court and may obtain a writ of
error to the judgment of the county court in such cases, if they
have a peculiar interest in the subject-matter of controversy
not common to the community at large, and if this peculiar
interest is prejudiced. Though not decided because not in-
volved directly in the case, I consider *Wingfield* v. *Crenshaw*,
3 H. & M. 245, as strongly countenancing these views. And
I regard them as sound.

Applying these views to the present case, it is obvious that Al-
exander Hays having an established ferry across the Ohio
close to the proposed Williamson ferry had a peculiar in-
terest not common to him and the residue of the community
in the matter before the county court. And though, as is ad-
mitted, Hays had no vested right to the exclusive privilege
of transporting persons and teams by his ferry from the West
Virginia side of the Ohio river to Matamoras in Ohio, still
having, as the evidence shows, such peculiar interest differ-
ing from that of other members of the community he was
properly allowed by the court to be a party to this contro-
versy and to resist the opening of this new ferry, which, the
facts prove show, would have reduced the value of his ferry
more than fifty *per cent.* And, when Williamson obtained his
writ of error from the judgment of the county court refusing
to establish this new ferry, Hays had a right to apply to this
Court for a writ of error from this judgment of the circuit
court. (See Acts of 1882, chap. 157, sec. 1, paragraph 3, p. 505).

It remains to consider, whether the circuit court erred in the judgment reversing the judgment of the county court and establishing this ferry from the Williamson landing according to his application. Formerly the Code of West Virginia, section six of chapter forty-four, provided that the board of supervisors and after 1872 the county court should not establish over a water course a ferry within half a mile of another ferry legally established except over the Ohio river. (*Mason* v. *Harper's Bridge Company*, page 409.) The obvious reason for granting this exclusive privilege to the proprietor of a ferry was, that it was considered promotive of the public good, it being considered that there was not sufficient travel and transportation over any stream in this State to justify the establishment of two ferries so close to each other. This law was repealed in 1882. See Acts of Assembly of 1882, chapter 159, section 6. But in repealing it the legislature simply declared, that it ought not to be regarded as prejudicial to the public good in every case to establish two ferries over a stream in this State within that distance of each other. It was considered, and very properly it seems to me, that instead of prohibiting the establishment of a second ferry close to another over the same stream it should be left to the discretion of the county court subject however to the review of the circuit court to determine, whether the general public interest would be promoted in the particular case by the establishment of two ferries so close to each other over the same stream. As a matter of course in the great majority of cases the establishment of two such ferries would be prejudicial to the public interest, as it would rarely happen that two ferries so close to each other could be maintained or kept up because of the small amount of patronage each would receive, and of course the public would be better accommodated by one ferry well kept up and properly attended than by two, which were badly kept up and indifferently attended, even if some persons might save a half a mile of travelling because of the existence of the two. But this would not necessarily be the case, for in particular localities two ferries could be well kept up and attended, even when so close to each other and over the same stream, because there would be a sufficient patronage to well support the two. It would

seem therefore, that the county court, when an application is made to open a new ferry over a stream close to one already established, ought in determining, whether the public good would be promoted by granting the application, to have before it evidence on the question, whether the travel and traffic across the stream at that point would be sufficient to well maintain two ferries. For if there be not this amount of travel and traffic across the stream, the general public will be injured rather than benefited by the establishment of two such ferries, it being more for the accommodation of the general public, that there should be one well kept and attended ferry over a stream than two indifferently kept and badly attended, though by the existence of the two some persons might be saved a short distance in travelling.

In the case before us there was an old established ferry across the Ohio river opposite or nearly opposite Matamoras in the State of Ohio. The record does not show what is the size of the town or village, nor what amount of travel or business was done by persons living in this State with this town or village. The record does show that there had been at some previous time twice as much travel or business from this side of the river to Matamoras as now, and that the old or Hays's ferry accommodated all this trade or travel well, though in so doing the proprietor on public days had sometimes to hire help. It was proven that this old or Hays's ferry was well kept and well attended; and that the site was quite as good if not better than that of the proposed ferry. It was on the other hand proven by the applicant, that the fact that the proposed ferry would be some half a mile or so distant from the old ferry and nearly opposite the other end of Matamoras, would reduce by a mile and a half the distance, which more than half the persons going to Matamoras from this side of the Ohio had to travel in going to and returning. But the applicant failed to prove the amount of travel and traffic, which crossed the Ohio river from this side to Matamoras, or whether it was sufficient to support even tolerably well two ferries; and though the proprietor of the old ferry was examined, yet no proof was produced of what profit he received from this ferry. There is nothing in the record, which gives us any idea, whether two ferries could be kept

up across the Ohio river opposite Matamoras; and for all that appears in the record, it may be that the traffic and business with Matamoras from this side of the Ohio river is so small, that two ferries could not be sustained even tolerably well, and that the effect of establishing the two ferries would be to prejudice the general public by furnishing it very poor accommodation, and even those, who might save a distance of a mile or mile and a half in going to and returning from Matamoras by using the new ferry, might nevertheless be incommoded because of the indifferent manner, in which it might necessarily be kept and attended for want of the necessary patronage to support it. For though the proprietors of ferries are required under penalties to furnish certain accommodation to the public, yet the public need not expect such accommodation from the proprietor of a ferry, if he can furnish it only at a pecuniary loss, the business of the ferry not paying expenses. Under these circumstances I think the county court did not err in refusing to establish the new or Williamson ferry. And as on the writ of error taken by Williamson to this judgment he was bound affirmatively to establish, that the county court erred in this judgment, and as this can not be done by what appears on the face of this record, I conclude, that the circuit court erred in reversing the judgment of the county court and making an order to establish this new or Williamson ferry.

For these reasons the judgment of the circuit court of Tyler rendered December 6, 1883, must be reversed; and the plaintiff in error in this Court must recover of the defendant in error, A. R. Williamson, his costs in this Court expended; and this Court must enter the judgment, which the circuit court of Tyler county should have rendered, and affirm the judgment of the county court of Tyler rendered July 14, 1882, and decree against the plaintiff in error in that court, A. R. Williamson, the costs expended by the defendant in error in that court, Alexander Hays; and this decree must be certified to the circuit court of Tyler county and by that court it must be certified to the county court of Tyler.

REVERSED.