# CHARLESTON.

FERRY CO. *v.* RUSSELL.

Submitted June 13, 1902.    Decided December 20, 1902.

1.  NOTICE—*Application—Ferry.*

    A notice of an application and an application for a ferry give a sufficient description of the proposed ferry in saying that the ferry is to be "across the Ohio river from a point in Lincoln district, in said county of Tyler, on lands belonging to (persons named) to the said (person's) landing on the farm of Talbott Bros. in Monroe County, State of Ohio." (p. 358).

2.  FERRY—*Viewers—County Court.*

    A report of viewers appointed to report upon an application for the establishment of a ferry, signed by two of three viewers, the order of the county court authorizing two to act, is good. (p. 358).

3.  LAND—*Ownership—Ferry.*

    Ownership of land on the West Virginia side of the Ohio river is sufficient to enable the owner to sustain an application to establish a ferry over it, without his showing that he owns land on the Ohio side of the river. (p. 359).

4.  APPEAL—*Record—Jury.*

    An appeal from the county court to a circuit court under sections 47, 48 of chapter 39, and section 14, chapter 112, Code of 1899, is to be tried by the record as made up in the county court, and does not give right to a new trial by jury or

otherwise than by the record until reversal on the record.  (p. 359).

5. DAMAGES—*Ferry.*
   The owner of a ferry cannot recover compensation or damages for injury to his ferry flowing from loss of patronage incident to the establishment of a sceond ferry, either from the owner of a second ferry or the county.  (p. 360).

6. FERRY.
   Where there are already two ferries within a mile of each other, and the owners of one of them apply for the establishment of a third one between them, and its establishment will injure the revenue of the other existing ferry, and it does not appear that the travel will well support three ferries, and there is no imperative public need of the third ferry, it should not be established.  (p. 361).

Error to Circuit Court, Taylor County.

Bill by the Sistersville Ferry Company against Joshua Russell.  Judgement for plaintiff, and defendant brings error.

*Reversed.*

BOREMAN & CARTER, for plaintiff in error.

BASIL T. BOWERS, for defendant in error.

BRANNON, JUDGE:

The Sistersville Ferry Company filed in the county court of Tyler County an application for the establishment of a ferry across the Ohio river.  The court appointed viewers to report to the court the matters required by law, and they filed their report.  Three viewers were appointed with power in two of them to act, and only two acted.  Joshua Russell owned a ferry across the Ohio river within half a mile of the proposed new ferry and filed a petition alleging that his ferry would be greatly injured by such new ferry, and that the travel would not support two ferries, and asked to be made a party to the proceeding so that he might resist the establishment of the new ferry, and was made such party, and resisted the application.  The county court decided to establish the new ferry, and Russell took an appeal to the circuit court, and it having affirmed the order of the county court, Russell brings the case here by writ of error.

The resistant, Russell, says the county court erred in not sus-

taining his motion to quash the notice of the application and the application, because they do not definitely state the location of the ferry. The notice and written application say that the ferry is to be "across the Ohio river from a point in Lincoln district, in said county of Tyler, on land belonging to E. W. Talbott, C. Tuel, S. Tuel, K. Tuel, E. E. Tuel and F. D. McCoy, partners in business as the Sistersville Ferry Company to the said company's landing on the farm of Talbott Bros. in Monroe County, state of Ohio." The description could not readily have been made more definite. The precise point, as from a stone, to another precise point on the other side of the river might be given; but there is no call for this, and it would not suit for a ferry—no precise magnetic line, no limited point, for it must have further reach on the shores and on the water. Less particularity is required in description of a ferry than in a conveyance or a summons in unlawful detainer. As to these it is enough to give reasonable certainty so that by the means of identification given in deed or summons, with the aid of other means outside the paper description, the tract may be found on the ground. It can thus be made certain. *Foley* v. *Ruley,* 43 W. Va. 513, and cases cited.

And as to the description of a proposed ferry, Judge Baldwin, in *Sommerville* v. *Wimbish,* 7 Grat. p. 229, expressed sound sense when saying: "In establishing a ferry, the usual form of its designation is from the lands of an individual on one side, the watercourse to the lands of another on the opposite side; and the place of the departure is always regarded as the seat of the ferry. There is no necessity for requiring a more particular description of the ferry ways on either side, and it would be extremely inconvenient to do so, both as it regards the public and the ferry keeper; for that would render an exact description on both sides by metes and bounds indispensable, and make every departure from them unlawful, however immaterial, and whatever the urgency of the occasion, and though attended with no invasion whatever of the rights of others." To say that this notice did not let the resistant and all others know the location of the ferry cannot be plausible.

The point is made that one of the three viewers was not notified of his appointment and did not act. The answer is, that the appointment authorized two to act, and section 7, chapter 13, clause 2, Code, says that where a joint power is conferred upon

three or more a majority may act. Want of notice to the third viewer could not affect the proceeding. And I see no objection in the county court on this score. The statute on ferries allows a report by two only.

Another point made against the order of establishment is, that it is not shown that the applicants owned or had contracted for land on the Ohio side. They showed that they owned, some of them, a tract on this side of the river, and it is not necessary that they own any on the other side, so far as affects their capacity to maintain a proceeding to establish a ferry. As to whether they had landing easement on the Ohio side is another question. They could land on the beach owned by the State and travelers could use the public way, if any. They might make arrangements with land owners there. They had a landing there already in an unlicensed ferry. That is not in this question. Code, chapter 44, section 2, says any person "who owns or has contracted for the use of land at the point at which he wishes to establish the same, may present his application," etc. As seen above in what Judge Baldwin says that the seat of this ferry would be on the West Virginia side of the Ohio; and if an applicant own land at the ferry seat, the place of departure, that is enough. The statute does not say any thing about land on the other side. That is in another state. It is said that it was not shown that all the applicants were owners of the land on this side of the river, but the title was only in some of them. What does that matter to Russell? Those who did own made the application, and their application along with the owners showed their willingness to devote the land for partnership purposes of all.

Russell makes the point that the circuit court upon the appeal erred in not sustaining a motion by him to grant him a jury trial of the merits, with rights to produce additional evidence and assess his damage. There are two answers. An appeal taken from the county to the circuit court under Code, chapter 39, sections 47, 48, and chapter 112, section 14, is not an appeal in the ordinary sense of that word, importing a process in the superior court by which a new trial of fact is had, upon evidence the same as used in the county court or new evidence; but it is triable only on the record as made in the county court. This is

apparent from the statute and by the opinion in *Williamson* v. *Hays,* 25 W. Va. p. 614.

Another answer is that the establishment of the ferry, though it injure Russell's ferry by diminishing its patronage, in the eye of the law gave no right to damages. It is useless to cite us cases to show that a legal ferry is vested property. That is incontestable. *Mason* v. *Bridge Co.,* 17 W. Va. 396; *Patrick* v. *Ruffner,* 2 Rob. 214. It is useless to cite those cases to show that such ferry franchise owner can maintain action against one damaging it by another ferry unauthorized by public authority. In the present case the applicants for the ferry were asking their ferry by due process of law in such case by a procedure directed by the legislature. The point of error made under this head asserts that the legislature cannot authorize a second ferry injuring another by diminution of its patronage because it is damaging private property for public use without compensation. But that contention is repudiated in the *Mason Bridge Case.* In *Sommerville* v. *Wimbish,* 7 Grat. 205 also, and it is held further that a second ferry passing along the same line as that of an existing one may be established. In *Bridge Co.* v. *Bridge Co.,* 34 W. Va. 155, this Court went to the length of deciding that a ferry licensed long before the statute prohibiting a second ferry within a half mile of an existing one had no contract which could prohibit the legislature from repealing the act, and did not vest in its owners a perpetual monopoly, or render illegal the establishment of another ferry or bridge within half a mile, after the repeal of the prohibition. When the case was appealed to the United States Supreme Court it was there held that the old ferry grant made no contract, and the decision of this Court was affirmed. It was held that an alleged surrender or suspension of the powers of government respecting any matter of public concern must be shown by clear and unequivocal language, and cannot be inferred from any inhibitions upon particular officers or tribunals or uncertain expressions. *Belmont Bridge* v. *Wheeling Bridge,* 138, U. S. 287.

In *Williams* v. *Wingo,* 177 U. S. 601, was involved the same question, whether a ferry license while the act of 1840 fixing the half mile limit was in force gave a vested right denying power to grant a ferry within half a mile of another after repeal of that act by the Virginia legislature. It was held that it did not.

It was held that the act of 1840 only tied the hands of the county court against a grant within half a mile, but did not bind the legislature. The cases upholding exclusive grants of franchise are those where the monopoly is in the body of the charter. The courts will not concede it where it is sought to deduce it from general law. See *Pearsall* v. *Great Northern Co.*, 161 U. S. 646, and *Central Railroad* v. *Wright,* 164 *Id.* 327, discussing this subject, also 12 Am. & Eng. Ency. L. (2d ed.) 1101. Now, it cannot be pretended that when Russell obtained his ferry grant in 1899 under Code, chapter 44 of general law, there was any intimation in the Code of any exclusive grant. It is neither contract nor vested property in the sense that it restricts governmental power. Neither the public nor the Sistersville Ferry Company would be subject to damages from a second ferry. This is pointedly settled by *Hoster* v. *Marlowe,* 44 W. Va. 707.

These days grants of exclusive privileges are rare, and should be. They are in restraint of public power and hurtful to the public. It may be truly asserted that the courts have always disfavored monopolies, and have been fertile in finding ways in which to repel them. There was no right to a jury to assess damages.

Another assignment of error is that the court erred in establishing the ferry because by the evidence it was shown that the travel would not well support two ferries. I am not sure whether point 5 in *Williamson* v. *Hays,* 25 W. Va. 609, is only admonitory to the county court in saying that it is an important inquiry whether the travel will well support two ferries, as that inquiry must have much weight, or whether its action can be reversed for that cause alone. Can the county court's action, based on the report of viewers and evidence, be reversed for that cause, or is its discretion final?

It may be thought that as the constitution vests that court with police jurisdiction, and the establishment of a ferry falling within that jurisdiction, the discretion of that court is not reviewable. But the legislature took a different view in giving an appeal in a ferry case in Code, chapter 139, section 47, and I think this covers the whole case, evidence and all. It is not an unlimited discretion upon the evidence, only a reasonable

one, which must not be abused. The *Williamson Case* above is a precedent for such review.

Then, did the county court err in this case? We think that it did. The record shows that these same parties owned, at Sistersville, a steam ferry half a mile below the proposed new ferry, and that Russel owned a ferry half a mile further up the river from the proposed ferry. The applicants asked a third. For what? Was it only to drive out Russell and monopolize the business? It does not appear that the travel would well support two ferries, it does not distinctly so appear. According to the *Williamson Case* that is an important element.

I do not construe that case as saying that it is controlling; for if the public need, for any reasons, would plainly demand a proposed ferry, I think the fact that the travel will not support both would not deny the ferry. I think the public interest paramount; but the fact specified enters into the question. We will not go so far as to say that the public convenience does not, to a limited extent, support the present application, but there is no real imperative public need. We must consider other facts entering into the matter. The first is as to the sufficiency of travel for support. If there were already only the Russell ferry, we would say that though it is not plain that the travel will support two ferries, especially as it is diminishing during the decay of the oil business on the Ohio side of the river, yet the county court did not clearly err on the evidence. But the report and evidence show the presence of another, a steam ferry. The evidence does not show that the travel will well support three; it shows that it will not. The investigation in the county court does not appear to have brought this existing steam ferry into the estimate, and that investigation was, therefore, too narrow. Another element in the question is, that Russell had a ferry granted by authority, and it is property, and the report and evidence show that it will be injured by the proposed ferry. You will say that his property cannot bar the public need. I say so too; it cannot bar it, but it goes into the scales. The *Williamson Case* says that he has a special interest entitling him to be heard. Why is this, if that interest is not to be considered? He is admitted as a party, not as an *amicus curiae*, but to defend his property. And it appearing that there is no

real, substantial, imperative public need for this third ferry, it was error to his prejudice to inflict an injury upon him.

Therefore, the judgment of the circuit court is reversed, and this Court rendering such judgment as the circuit court ought to have rendered, the judgment of the county court is reversed, and the application to establish the ferry is dismissed.

*Reversed.*