# CHARLESTON.

GORDON C. GREENE *et al. v.* JOHN W. LANE

### (No. 5382)

Submitted November 3, 1925. Decided November 10, 1925.

1. FERRIES—*In Establishing Additional Ferry, Public Need of Additional Service is First Question to be Considered.*

    In the establishment of an additional ferry by which it is proposed to render substantially the same service already rendered by an established ferry, the imperative public need of such additional service is the first question to be considered.
    (Ferries, 25 C. J. § 13.)

2. SAME—*On Failure to Show That Ferry, to Render Substantially Same Service as Established Ferry Will Benefit Traveling Public, Franchise Should be Refused.*

    Where adequate service is already being performed by an established ferry at a financial loss to the owner and proprietor thereof, and it does not affirmatively appear that an additional ferry to render substantially the same service will be of material benefit to the traveling public, or that the travel and business across the stream will be sufficient to support reasonably well two adequately equipped and properly attended ferries, the county court should refuse to grant a franchise for such additional ferry.
    (Ferries, 25 C. J. § 13.)

    (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Mason County.

Petition by Gordon C. Greene and another to establish a ferry across the Ohio river, resisted by John W. Lane. After an order affirming an order of a county court granting petitioners leave to establish a ferry, John W. Lane brings error.

*Order reversed.*

*F. G. Musgrave* and *Somerville & Somerville,* for plaintiff in error.

*J. E. Beller* and *B. H. Blagg,* and *H. C. Johnston* and *R. M. Switzer,* for defendant in error.

MILLER, JUDGE:

Upon application to the county court of Mason County, Gordon C. Greene and Charles L. Arthur were granted leave to establish a ferry across the Ohio River at the place designated in their application. On appeal to the circuit court by John W. Lane, who resisted the petitioners' application, the order of the county court was affirmed.

The petitioners to the county court proposed to establish a ferry from a point on the West Virginia side of the river near Wallis' store about 2.5 miles south of the present Gallipolis ferry, owned and operated by said Lane, to a point on the Ohio side known as Clipper Mills, 4.4 miles south of the City of Gallipolis, the western terminus of the Gallipolis ferry. Because of a sharp bend in the Ohio River and the level land lying inside the bend on the West Virginia side, it appears that the distance from Wallis' store to the Ohio landing of the Gallipolis ferry is about 2.8 miles less by way of the old ferry than by the proposed new ferry. There is, however, a hard surface road on the Ohio side of the river from Clipper Mills to Gallipolis, while the road from Wallis' store to the West Virginia landing of the Gallipolis ferry is an earth road, good in the summer time and in dry weather, but muddy in the winter season. But, by stipulation of counsel, it was admitted by the parties that the West Virginia state road commission had, before the time of the hearing before the county court, July 28th to 31st, 1924, made a survey for a permanent

hard surface road along the east side of the Ohio river, passing by Wallis' store northward to within 6/10 of a mile from the West Virginia landing of the present ferry, which is nearer than the present road.

The old ferry now owned by Lane was established in 1805, under authority of a franchise granted by the legislature of the State of Virginia, and has been in continuous operation from then to the present time. Previous to April 1919 it was owned and operated by petitioner Greene and another, who about that time sold the ferry equipment and their lease to the resistant Lane, for the sum of $11,000.00. Later, Lane purchased the franchise for $10,000.00. He testifies that, including the purchase price of the equipment, the lease, franchise, and repairs and additions made thereto, he has now invested in the property about $30,000.00. Lane's evidence shows that for the past four years and more he has been operating the ferry at a loss, as follows: in the year 1920, loss $252.51; in 1921, loss $2,618.31; in 1922, loss $1,652.32; in 1923, profit $895.34; first six months in 1924, profit $449.32; that the only reason he has been able to operate it in the period covered by the figures submitted, is that in calculating profit and loss he allowed as expenses $5.00 per day for his time in operating the ferry and $3.00 per night for remaining on the ferry boat in the nighttime to protect it from rising and falling water and to comply with the requirements of the insurance companies.

Petitioners place much reliance on a number of petitions filed with the county court, signed by several hundred residents of Mason County, West Virginia, and Gallia County, Ohio, whose professed opinion is that the proposed ferry is a necessity and would be a great convenience to many residents of both states living near the Ohio River. As to the greater number of these petitioners, it does not appear in what part of the respective counties they reside, whether or not they would be patrons of the proposed ferry, or who in particular, or how many persons, would be benefited by the new ferry. Petitioners also introduced a number of witnesses, who testified that two or more roads from the east intersect with the

Ohio River road at a point near Wallis' store; that the proposed ferry would benefit residents of West Virginia who desire to get coal from mines in Ohio two to four miles back from Clipper Mills; that the Ohio land along the river at that point is not adapted to raising grain and stock feed, while the West Virginia side is; and that the distance by the present route from Wallis' store to Clipper Mills, because of the state of the roads on the West Virginia side and the distance between the two points, prohibits trading between these localities. How much trading would be carried on between the residents of the two states if the proposed ferry is established does not appear, but it does appear that little has been done in the past; and the evidence shows that practically all the West Virginia residents are as near coal mines in this state as they are to those in Ohio. There is some evidence that coal can be secured at a lower price in Ohio than in West Virginia, but whether there would be any substantial saving to the West Virginia consumers is not clear. Much of the benefits to be derived from the new ferry are speculative, and are not based on fact. Clipper Mills is a village of some twelve or fifteen inhabitants, while the City of Gallipolis has a population of about ten thousand; and it appears that the great majority of West Virginia residents crossing the river in the locality do so to get to that city.

Between Gallipolis ferry and Swan Creek ferry, in a distance of about 24 miles, there are now three other ferries, two of which have so little patronage that operations have about been abandoned. The Baltimore & Ohio Railroad station of Gallipolis Ferry, on the east side of the river, lies at the point where the branch road to the old ferry intersects with the main county road north and south along the river, and is about 9/10 of a mile from the ferry landing. Passengers to and from Gallipolis traveling by this railroad are discharged and received at this station, and freight to and from that city is also handled here. The new ferry would not benefit passengers or shippers of freight using the railroad.

Where substantially the same service is already being performed by established ferries, in granting or refusing a fran-

chise for an additional ferry, the county court should consider first the imperative public need for additional service. *Williamson* v. *Hays,* 25 W. Va. 609; *Ferry Company* v. *Russell,* 52 W. Va. 356; *Egerton* v. *Flesher,* 76 W. Va. 519. In *Williamson* v. *Hays,* it was held: "In such case the important inquiry to be made by the county court before establishing such new ferry is, whether the travel and business across the stream is or is not sufficient to support reasonably well two ferries, as the result of such inquiry must have much weight in determining the question, whether the new ferry should or should not be established." See, also, *Ferry Company* v. *Russell, supra.*

In *Williamson* v. *Hays,* where it was proved by the applicant for the new ferry that its establishment would reduce by a mile and a half the distance which more than half the persons going to a particular point in Ohio from the West Virginia side of the river would have to travel in going over and returning, because the applicant failed to prove the amount of travel and traffic then patronizing the old ferry and whether it was sufficient to support even tolerably well two ferries, it was held that he did not show that the business would support two ferries; the opinion further saying that, "if there be not this amount of travel and traffic across the stream, the general public will be injured rather than benefited by the establishment of two such ferries, it being more for the accommodation of the general public, that there should be one well kept and attended ferry over a stream than two indifferently kept and badly attended, though by the existence of the two some persons might be saved a short distance in traveling." Here the evidence appears conclusive that the travel across the Ohio River in the vicinity of the proposed ferry and the old one will not be sufficient to support two ferries. The one now operating is a losing investment to its owner. If one operates at a loss, necessarily two will operate at a greater loss. The benefit of the service rendered to the public is, to a great extent, to be measured by the efficiency of such service; and anything which tends to cripple or render unprofitable the service already estab-

lished, will injure the public good.    There seems to be no question that the present Gallipolis ferry is rendering efficient service, and taking care of all traffic at that point.    And this notwithstanding the fact that the proprietor of the enterprise has suffered great loss in the past four or five years. He deserves some consideration, by the protection of his franchise, especially so in view of the fact that he has endeavored to serve the public at such a sacrifice to himself. To permit the establishment of a new ferry at this time, just when it appears he is beginning to realize a small return from his investment, under the circumstances disclosed by the evidence, would no doubt permanently render his business unprofitable, if not to compel him to cease operation and leave the public without service at the point now traversed by his ferry.    It is said that the fact Lane may have made an unwise investment should not protect him to the exclusion of others desiring to enter into the same service.    But it appears he has not been realizing a reasonable return on the amount he paid the petitioner Greene for the lease and equipment, without taking into consideration the cost of the franchise and the sums expended in repairing the old equipment  purchased.

This is a stronger case in favor of the resistant Lane than that made by the resistant Hays in the case above cited and quoted from, for there the record did not affirmatively show that two ferries could not be operated at a profit.    We are, therefore, constrained to hold that the county court of Mason county was not justified by the evidence in granting leave to the said applicants to establish the ferry proposed by them, and that the circuit court erred in affirming the order of the said county court on appeal.

The order of the circuit court will be reversed.

*Order reversed.*