# CHARLESTON.

ERNEST QUESENBERRY and W. EMERY QUESENBERRY *v.* STATE ROAD COMMISSION OF WEST VIRGINIA and RALEIGH TRANSPORTATION, EQUIPMENT AND CONSTRUCTION COMPANY

(No. 5882)

Submitted May 11, 1927.          Decided May 24, 1927.

1.  CERTIORARI—*"Certiorari" Lies Only to Review Judicial or Quasi Judicial Actions of Inferior Board of Tribunal (Code, c. 110, §§ 2, 3).*

    The writ of certiorari under Secs. 2 and 3 of Chap. 110, Code, lies only to review judicial or quasi-judicial actions of an inferior board or tribunal. (p. 722).

    (Certiorari, 11 C. J. § 67.)

2.  CERTIORARI—*Commission's Awarding Certificates to Operate Bus Lines is Non-judicial, Where no Property Rights Are Affected, and Cannot be Reviewed by Certiorari (Acts 1925, c. 17; Code, c. 110, §§ 2, 3).*

    The awarding by the State Road Commission of certificates of convenience and necessity to operate bus lines between fixed termini over a State road, to two rival applicants for the certificate, under Chap. 17, Acts 1925, is non-judicial where no property right of either, or of any other person, is affected directly or indirectly; and such award cannot be reviewed by writ of certiorari. (p. 723).

    (Certiorari, 11 C. J. §§ 67, 68, 69.)

    (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

· Appeal from Circuit Court, Kanawha County.

Certiorari by Ernest Quesenberry and another to review a judgment of the State Road Commission granting to the Raleigh Transportation, Equipment & Construction Company a certificate of convenience to operate a bus line. From an order canceling the certificate, the State Road Commission and the Raleigh Transportation Company appeal.

*Reversed; case dismissed.*

*H. B. Lee,* Attorney General and *R. Dennis Steed,* Assistant Attorney General for appellant State Road Commission.

*Lilly & Lilly,* for appellant Raleigh Transportation, Equipment & Construction Co.

*Williams & Riffe* and *Byrne, Littlepage & Linn,* for appellees.

LIVELY, JUDGE:

By this proceeding in *certiorari* Quesenberry and Quesenberry challenge the judgment of the State Road Commission in granting to the Raleigh Transportation, Equipment and Construction Company (hereinafter called Transportation Co.) a certificate of convenience to operate a bus line over the state highway between Beckley in Raleigh County and Hinton in Summers County. The order of the circuit court cancelled the permit or certificate of convenience granted by the Commission to the Transportation Company, and the Commission and Transportation Company appeal.

Both Quesenberry and the Transportation Company had applied for the certificate in the early part of 1924, when hearings were had thereon. Because the construction of the road had not been completed, no action was taken by the Commission thereon until June 10, 1925, when the certificate was granted to Quesenberry, and refused to the Transportation Company. The latter, claiming an understanding was had that further evidence could be taken before submission, if desired, made application on July 6, 1925, for a further hearing on both applications, which was granted. In the meantime Quesenberry had begun to operate his busses over

the route. Both parties appeared, and further evidence was taken and preserved. The Commission made investigation through its members, servants and employees respecting the route and the necessity for transportation service over it for public convenience; and on Apr. 26, 1926, a certificate was issued to the Transportation Company to operate over the road until Dec. 31, 1929, but Quesenberry's certificate was not revoked. Quesenberry, conceiving that the Commission had erred in thus granting two bus line certificates to operate contemporaneously over the same route, applied for and was awarded a writ of *certiorari* by the Circuit Court. The Commission moved to quash the writ, which motion being overruled, it filed its return accompanied by the record made before it, including the evidence which was preserved. The evidence gleaned from its independent investigation was not preserved. Upon this record and evidence the Circuit Court revoked the permit awarded the Transportation Company.

Quesenberry asserts that the Commission had no jurisdiction to reopen hearings on the application and take further evidence after it had granted the certificate of June 10, 1926. We think the Commission had the right to reopen and rehear, upon the claim of the Transportation Company that it (the Commission) had acted prematurely in awarding the certificate to one and in refusing it to the other. If it was the understanding that further evidence was to be taken, it would be manifestly improper to pass upon the respective applications without giving either party the opportunity of presenting further evidence. It will be observed that the initial evidence and hearing upon both applications was had on February 26, 1924, but no action was taken by the Commission, (the road then being under construction), until June 10, 1925, nearly sixteen months later. We think it was within the discretion of the Commission to grant the rehearing, and it does not clearly appear that this discretion was abused. The application of the rule that a court cannot set aside a final order after the term expired at the end of the term at which it was entered, would scarcely apply to the action of the Commission. It has no fixed terms of its sittings. The

request for further hearing and evidence was not unreasonably delayed. It is true that Quesenberry had begun to operate and had expended money and energy in perfecting his organization, relying upon the award of his certificate, and no doubt the Commission took that fact into consideration in the final disposition, for it refused to cancel the Quesenberry certificate.

The controlling question here is, was the Commission warranted in awarding two contemporaneous certificates of convenience over this route? The evidence heard by the Commission prior to the 10th day of June, 1925, was largely directed to the fitness, responsibility and financial ability of the rival applicants. Upon the rehearing the Transportation Company supplemented that character of evidence and gave the results of its former operation as a taxi operator over the route. It appears that up to June 10, 1925, both applicants had operated over the route under their taxi licenses, and that when the roads became muddy and the business unremunerative, Quesenberry ceased the service while the Transportation Company continued to serve the public, at a loss of $1,400.00. The roads were almost impossible of passage at times in the Winter, because of mud, but in order to serve the public convenience and create public preference when the better seasons came, the Transportation Company continued the service at a loss of $1,400.00. In the month of May, 1925, after the road had been completed and both applicants were regularly operating their taxi-cabs over the route, it began making a profit, which continued up in June of that year, when the Commission gave notice that its application had been refused. Quesenberry's evidence upon the rehearing was to the effect that since the certificate of convenience had been given him, he had adequately served the public without complaint from any one, and that there was no demand or room for competing service.

Counsel for Quesenberry would sustain the court's order under the familiar principle that where a public service is already being performed, there is no public necessity for another and similar service, and that the private right of an-

other to engage in the enterprise in competition with the one
in operation must yield where there is no imperative need for
such additional service.   This principle is enunciated in our
cases relating to the establishment of a ferry in competition
with another ferry which is already supplying public needs.
*Greene* v. *Lane,* 100 W. Va. 399, 130 S. E. 522; *Edgerton* v.
*Flesher,* 76 W. Va. 519; *Ferry* v. *Russell,* 52 W. Va. 356; and
*Williamson* v. *Hays,* 25 W. Va. 609. This principle is not appli-
cable here, for the reason that there was no certificate of con-
venience in existence. The matter of the issuance of such cer-
tificate and to whom it should be issued was the only question
before the Commission.   The fact that Quesenberry had re-
ceived a certificate in June, 1925, before the matter had been
fully matured, might have influenced the Commission in its de-
cision not to cancel that permit thus prematurely and inad-
vertently issued. The whole matter was opened for rehearing,
and the primary and controlling question was: To which of
these applicants should a certificate be granted?

The evidence submitted by Quesenberry as to what was
done after he had received a permit, has little bearing on the
issue except to show by the result of actual operation that
he was a fit person to receive the permit.   Reverting to the
evidence taken on the controlling question, we find ample
support upon which to base an award to the Transportation
Company in preference to Quesenberry.   The net worth of
the Transportation Company was shown to be $48,000.00,
with ample cash on hand; that it was conducted by men of
experience and probity; that it had adequate cars; that it
had a large building and a modern repair shop for its cars,
and could meet any reasonable emergency, having about 15
cars which it could put into service.   It was shown that
while it operated over this route it gave entire satisfaction,
in addition to the fact heretofore mentioned that it served
the public in the Winter months when the roads were al-
most impassable, at a substantial loss.   On the other hand,
there was no just criticism of the ability, capacity and in-
tegrity, or former public service of Quesenberry.   On the
final hearing the Commission evidently came to the conclu-
sion that the Transportation Company was entitled to the

certificate, but was influenced by the fact that it had, by its premature action, caused Quesenberry to expend money and purchase equipment, and therefore concluded not to require him to stop. Hence it concluded to treat both alike. Either that inference may be drawn, or that the Commission concluded that the public would be best served by two companies.

Complaint is made that the public necessity does not require two separate services, and therefore the judgment of the Commission was wrong. The preponderance of the evidence is that one service is sufficient, and that two cannot operate at a profit. But conceding that such is the case, why should the court prefer Quesenberry when the Commission has not? If either is to be cancelled, can the court make a choice? Evidently the lower court concluded that Quesenberry had the prior right, and by the certificate issued June 10, 1925, acquired a property right on which the Commission could not transgress. That view is untenable. As before stated, that certificate was issued prematurely, and the Commission opened the hearing *de novo* for good and sufficient reasons appearing to it.

There is, and ought to be, a clear distinction between the act of the Commission in determing which of two applicants shall receive a certificate, both standing upon equal ground and no property right being involved; and where the Commission acts upon rival applications affecting some property right of either applicant. In the former case, the act is administrative and ministerial. One who applies for a certificate or license has no property right involved. It is a privilege equally available to all persons. But after the permit has been issued to him and becomes final, he has obtained a valuable right which cannot be revoked except for cause, and which will be protected by the courts. And in proceedings involving the property right thus acquired, the tribunal acts in a judicial capacity, and its decision may be reviewed. If no appeal to the courts has been provided, *certiorari* will lie. The writ is an extraordinary remedy resorted to for the purpose of supplying a defect of justice in cases obviously entitled to redress and yet unprovided for by the ordinary

forms of procedure. *Poe* v. *Marion Machine Works,* 24 W.
Va. 517. And we held in our recent case of *Reynolds Taxi
Co.* v. *Hudson, Judge,* 103 W. Va. 173, 136 S. E. 833, that
certiorari would lie to the orders of the Commission granting
certificates of convenience to bus lines where such lines came
into competition with *established* public carriers. And in
*State ex rel. Ellis* v. *State Road Commission,* 100 W. Va.
531, 131 S. E. 7, it was pointed out that the revocation of a
taxi-cab permit was reviewable by certiorari, but that man-
damus would not lie to control discretionary action. But no
property right is involved in the present litigation. The
Commission had discretionary power to refuse certificates to
both of these contestants, to give to one and to refuse the
other, or to award to both, always keeping in view the public
interests and conveniences to be served. Its decision being
discretionary, and not involving the impairment of a property
right, is entitled to great weight and should not be disturbed
if there be evidence on which to base it, even granting that its
action is reviewable by *certiorari.* Of course, the power must
not be -exercised arbitrarily, capriciously or corruptly, or
without evidence.

Necessarily large discretion is given the Commission in
awarding or refusing these certificates where no private rights
are involved. The administration of the road laws is in the
hands of eminent men peculiarly skilled in the building and
preservation of roads, the character and density of the popu-
lation served, and their transportation needs. While the
statute does not require public hearings, the Commission
would naturally inquire into the merits of the applicants and
their ability to perform the public service sought, as well as
the needs and conveniences of the public. Their judgment
and discretion is likely to be better and sounder for all con-
cerned than those who are not better informed though more
learned in the law. We do no think that it was ever con-
templated by the lawmakers that every one who made appli-
cation for a certificate and failed, having no other right
thereto than the fact that he made application in due form
and was prepared to give acceptable service, could appeal to

the courts to control the discretion of the Commission in that regard. It would cause delays and uncertainties to the detriment of the public needs, besides congesting the courts with complaints of disappointed license seekers of questionable merit.

Where the granting or refusing of the certificate affects a right of property, illustrated in the ferry cases cited, and in the *Reynolds* case cited, the action of the Commission is judicial in its nature; but where no such right is involved, the action of the Commission is ministerial and administrative, and does not come within the realm of the judiciary.

The courts are rather unanimous in holding that *certiorari* is available to review only those acts which are judicial or quasi-judicial in their nature. 5 R. C. L. p. 258, Sec. 10; *Devlin* v. *Dalton*, 171 Mass. 338, 41 L. R. A. 379. And while our statute, Secs. 2 and 3, Chap. 110, Code, is broad, and says that in every case matter or proceeding before a county court, council of a city, town or village, justice or other inferior tribunal, the record or proceeding after judgment or final order therein may be removed by *certiorari* to the circuit court (except where some other mode of review is given, and excluding judgments of less than $15.00 in civil cases before a justice); and that upon such removal the court may, among other things, "determine all questions arising on the law and evidence and render such judgment or make such order upon the whole matter, as law and justice may require;" yet that statute does not change the common law in respect to the nature of the case, matter or proceeding which may be reviewed under it. Only judicial or quasi-judicial action is reviewable. Such was the common law. And under the common law the writ was used to correct abuse of jurisdiction, and decisions upon questions of law and the regularity of the proceedings. Harris on Certiorari, Sec. 45. Our statute has enlarged the writ as above set out in respect to what may be done under it, but does not enlarge it to include the review of proceedings other than judicial or quasi-judicial. *Railroad Company* v. *Town of Triadelphia,* 58 W. Va. 487.

But for the moment waiving the question of the jurisdiction of the circuit court, and referring to the evidence, we find that Ernest Chilson, a leading citizen of long residence in the vicinity, and a man of high standing and business ability having knowledge of the needs of the community served by the route, has testified that there was sufficient business to justify the granting of two permits or certificates; and others have stated that the travel would increase when the road was hard-surfaced; and others have given the population of the community served. We do not accord much weight to the inspection and investigation made by the Commission through its agents and employees, for the character and extent of that investigation is not shown, but no doubt it was a factor in the final conclusion, for the matter was under advisement for several months after it had been submitted.

We conclude that inasmuch as no property right was involved in the proceeding affecting either of the rival applicants, or any other person, the award by the Commission of certificates to each of them was discretionary and non-judicial, and therefore cannot be reviewed by the writ of *certiorari;* and the circuit court was without jurisdiction to entertain it. The order of the circuit court will be reversed, and the case dismissed.

*Reversed; case dismissed.*