# CHARLESTON.

## POLLEY v. GILLELAND.

Submitted June 10, 1911.   Decided April 15, 1913.

1. FERRIES—*Establishment—Intervention.*

Where the proprietor of a ferry has failed to exercise his franchise for the time presrcibed by section 1, chapter 44, Code 1906, and by disuse and force of the statute the same has been discontinued, he has no right thereafter to intervene, as contestant, in a proceeding by another to establish a ferry at or near the same place.   (p. 302).

2. APPEAL AND ERROR—*Finding—Establishment of Ferry.*

A case in which the evidence fully supports the finding and judgment below that there was public need or necessity for the establishment of a ferry at the place designated in the application.   (p. 304).

3. FERRIES—*Franchise—Termination.*

Where a ferry franchise has by disuse been lost or discontinued by operation of section 1, chapter 44, Code 1906, *quo warranto*, or proceeding under section 12 of said chapter is unnecessary.   The discontinuance has become complete and effectual without judgment of ouster.   (p. 304).

4. SAME—*Franchise—Termination—Disuse.*

Where the franchise granted authorizes the proprietor to operate a steam ferry, the subsequent discontinuance of such ferry, and the indifferent use of a skiff ferry under circumstances showing bad faith, and a purpose to deprive the public of the benefits of the ferry established, will not preserve the right and save the ferry established from the discontinuance imposed by the statute.   (p. 304).

5. ADVERSE POSSESSION—*Proceedings to Establish—Intervention —Collateral Attack on Franchise.*

Where the proprietor of such discontinued ferry intervenes to oppose the establishment of another ferry at or near the place of the old, and the court, on his petition and answer, is called upon to determine whether he is such person with such right as entitles him to oppose the establishment of such new ferry, its judgment thereon denying him that right does not amount to a collateral attack upon his right.   (p. 305).

Error to Circuit Court, Ohio County.

Petition by Albert Polley for the privilege of establishing a

ferry, and Robert M. Gilleland intervenes as contestant. Judgment for petitioner, and contestant brings error.

*Affirmed.*

*McCamic & Clarke,* for plaintiff in error.

*John P. Arbenz* and *Joseph Handlan,* for defendant in error.

MILLER, JUDGE:

The judgment of the circuit court, pronounced February 4, 1910, and to which the present writ of error applies, affirmed the judgment of the Board of Commissioners of Ohio County, of April 7, 1909, whereby the right and privilege was granted to Polley, the petitioner, to establish a steam ferry across the Ohio River, at or near the foot of Forty-third Street, in the City of Wheeling, to continue for the period of fifty years from that date.

Gilleland, claiming to be the owner by purchase in 1898, of a ferry right or franchise at or near the same point, granted to Richard Hutchinson, November 9, 1868, on petition filed, was made defendant to contest the right of petitioner to establish a new ferry at the place proposed.

The record of the proceedings before the Board of Commissioners is voluminous. Many points of error are presented in elaborate briefs of counsel, most of which, as we view the case, are immaterial and to which we need give no consideration.

The court below, affirming the judgment of the Board of Commissioners, in a written opinion filed and made part of the record, found as a fact, that the contestant, Gilleland, had abandoned his right and was not such a person as had right to complain of the judgment of the Board of Commissioners.

The order of the Board of Commissioners, of November 9, 1868, on which contestant's alleged right or franchise is based, is as follows: "Monday. November 9th, 1868. Ordered on the petition of Robert Hutchison that the order of this board entered on the 22nd day of February, 1868, allowing Daniel Detweiler to establish a steam ferry between the Washington Mill and a point opposite on the Ohio side be vacated and annulled, and this board being satisfied of the necessity of establishing a ferry at that place, it is ordered that Richard Hutch-

inson be granted leave to establish a steam ferry across the Ohio river at or near·the Washington Mill and below the same any place within one half mile to a point on the opposite side of the river in Ohio."

Section 1, chapter 44, Code 1906, relating to ferries, toll bridges, water courses, and mills, provides: "1. Every ferry established and not discontinued before this chapter takes effect may continue to be kept; and the rates of ferriage at every such ferry shall be according to the laws thereto, so far as the same are not altered by or under some provision of this chapter, or some act of the legislature hereafter passed. But if any such ferry, or any ferry that may be hereafter established, be disused for two years and six months, and any part of said time be after this chapter takes effect, it shall, by reason of such disuse, be *ipso facto* discontinued, without any judicial or other proceeding for that purpose."

The last clause of this section, "without any judicial or other proceeding for that purpose", was added by chapter 159, Acts 1882. Its evident purpose was to do away with the necessity, after the time specified, of judicial ascertainment, by *quo warranto* or other proceeding, that such ferry right or franchise had been discontinued or abandoned. Disuse thereof for two years and six months, as prescribed, operates in law a discontinuance or abandonment of such franchise. Once there has been such disuse for the period stipulated the discontinuance or forfeiture becomes complete, by operation of law, and the right of the owner is gone, and his right to intervene as contestant, in a subsequent proceeding by another applicant for a like franchise, is taken away; his right then is no different from that of any other citizen. *Williamson* v. *Hays,* 25 W. Va. 609.

But contestant in his answer alleges that he is still the owner of the Hutchinson ferry, and that he has never ceased to operate the same, by himself or by lessees under him, and that he has right to intervene and oppose the establishment of the proposed ferry by petitioner, and being such owner, among other defenses he·affirms two propositions: First, that as there is a ferry about a half mile above the proposed location, at Twenty-fifth Street, and one at Benwood, some two or three miles·below, the latter also owned and operated by him, there is no public need or necessity for the additional ferry at Forty-third Street. Second, that

there is no showing of disuse or abandonment of his ferry, and that whether or not contestant has by disuse discontinued or abandoned his ferry, his right cannot be collaterally inquired into, but only upon a direct proceeding, as by *quo warranto,* or under section 12 of said chapter.

On the first proposition the Board of County Commissioners, and the circuit court on appeal, found as a fact, and we think on competent legal evidence, not including the petitions of citizens filed with the petition, which were objected to, that there was public need or necessity for a steam ferry at Forty-third Street. Contestant was not operating such a ferry at that point. The skiff ferry referred to had, as the evidence tends to show, for a time, been operated at a loss to him, and for most of the time had yielded him a mere nominal rental, and at the time of the application was in fact yielding him no rental whatever. It is unnecessary for us to detail the evidence on which the finding of the Board of County Commissioners and the circuit court were based. It is sufficient to say that it fully supports the conclusions reached, and we could not, on well established rules of practice, reverse the judgment on this score.

The second proposition is the one mainly relied on. As already indicated we do not think that where loss of the right has been incurred, under section 1, *quo warranto* or any proceeding under section 12 is necessary. It will be observed that it is the disuse of the franchise, and not the mental intention to abandon, that works the discontinuance, or legal abandonment of the ferry. The Hutchinson franchise, as the order shows, was to operate a steam ferry, and the evidence shows that a steam ferry was operated, with an appropriate wharf or landing, and a bell for signaling, from about the time of the grant, by contestant's predecessors up until July, 1898, when he purchased the same. After Gilleland's purchase he never operated a steam ferry at that point, and the boat which is said to have been condemned as unfit for use as a ferry was dismantled, the engine and boiler removed, and the boat and floats used in connection therewith were permitted to float or drift away. Thereafter only a skiff was operated at that point, for the transfer of persons only, but in the most indifferent manner, for most if not all the time under leases to others, and for three years preceding the application of petitioner the skiff ferry was operated by the witness Mrs.

Mays, for two years under contestant, for a nominal rental, but thereafter, and from October 16, 1908, the end of her second year, to April, 1909, the time she gave her testimony, she had operated the skiff in like manner, regardless of Gilleland, from whom she had declined to accept a lease or contract. The business had run down at that time, as she testifies, so that it yielded only from forty to fifty cents income per day, and this was the only evidence of the existence of any ferry at that point at the time of petitioner's application. The disuse of a steam ferry, the kind of a ferry actually authorized, is fully established; and we think the evidence of intent to abandon or disuse any kind of a ferry, except as a mere sham, by operating in the indifferent way shown a skiff ferry, and not in good faith but to deprive the public of the benefits of the ferry originally established, is fully shown.

If, therefore, this were a proceeding by *quo warranto*, or under section 12 of said chapter, to declare the ferry franchise of the contestant at an end, we think the evidence would satisfy a judgment of ouster. Much reliance is placed by contestant's counsel on *Douglass' Appeal*, 118 Pa. St. Rep. 65, for the proposition that the maintenance of the skiff ferry was, under the circumstances, a substantial compliance with the requirements of the statute, and saved the ferry from disuse, and discontinuance by operation of law. That decision was predicated upon the fact that there was proof of no public demand for transportation, and no evidence of bad faith to the state or the public. Here the evidence is to the contrary. And as the court below pertinently says, in its opinion, under our statute it is not left to the judgment of the proprietor as to what kind of a boat, or with what number of persons he shall operate his ferry. The court must by its order granting the franchise or some subsequent order prescribe the kind of boat to be used.

But inasmuch as contestant denied discontinuance by disuse, and set up in his answer an existing right to the Hutchinson ferry, it is affirmed that the judgment below amounted to collateral attack on that franchise, and that the court was bound to accept without further inquiry his claim of right *quoad* this proceeding. But did the judgment and proceedings below amount to collateral attack? We think not. On the intervention of the petitioner, was the court not bound to determine from the facts whether he

was such a person or stood in such relation to the subject matter of the proceeding, as entitled him by such intervention to defeat the establishment of the proposed ferry? We think it was. The effect of the judgment of the Board of County Commissioners and of the circuit court, was not to declare a forfeiture or oust the contestant of any rights he had under the Hutchinson franchise. Their effect was simply to hold that the contestant was not such a person as had the right to oppose or defeat the grant to petitioner. This principle, as we interpret his opinion, was the one announced by Judge Tucker, in *Trent* v. *Cartersville Bridge Co.,* 11 Leigh 521. That was an injunction suit by the bridge company against Trent and others, to enjoin them from operating a private ferry, to the detriment and injury of the bridge company, as alleged owner of an old ferry franchise. The court below perpetuated the injunction. Judge Tucker says: "I am clearly of opinion that the decree should be reversed. The appellees rest their complaint, and ask relief in equity, upon two separate and distinct rights and franchises: 1. Upon their rights as ferry owners; and 2. Upon their chartered rights as a bridge company. As to the first; it will not be necessary to rest my opinion of their pretensions, either upon the ground of jurisdiction, or upon the supposed forfeiture of their franchise. That, it is admitted, can only be declared on a *quo warranto,* or some other similar proceeding. But whether the franchise be forfeited or not, it has been confessedly disused; and, considering the question as entirely distinct from and without reference to the bridge, it may be asked, whether the owner of a ferry, who has altogether abandoned the use of it, and who has entirely cast off from himself the duties incident to his privileges, can come into a court of equity, with any title to its countenance, aid or protection? His privileges are given as compensation for the duties and burdens imposed upon him; and when he has utterly disused his ferry, and no longer performs the consideration, what claim can he have in equity to the enforcement of exclusive rights? Nay more; as from disuse of the ferry he can make no profit from it, any violation of his franchise, if it be *injuria* at least is not *damnum.* Will a court of equity, then, which only interferes upon the principle of preventing irreparable mischief, interfere where the party sustains no mischief at all. It may, indeed, well be doubted, whether even an action at law could be sus-

tained by a ferry owner, who had abandoned and put down his own ferry."

The inquiry in that case was as much collateral as in this. The court there determined adversely to the contentions of the petitioners that they were the owners of a ferry franchise, with right to prevent others from operating a ferry on practically the same location. That was not a direct proceeding to forfeit the old right, but it was necessary in that case as in this for the court to determine the rights of the plaintiffs or contestant. Contestant concededly had no monopoly or exclusive franchise under the old Hutchinson grant, and the principle enunciated in *Williamson* v. *Hays, supra,* and *Ferry Co.* v. *Russell,* 52 W. Va. 356, is, not that a proprietor of a ferry franchise may be admitted to oppose the establishment of another ferry, simply to protect his pecuniary interests or right, but only to the extent that that interest involves his ability to properly and efficiently perform his duties to the public under his franchise. If he is not performing that duty and not exercising that right in the interest of the public, on what theory or principle can he be admitted to oppose the grant of a franchise to another who will serve the public? We know of no rule or principle justifying such a position. We think the judgment below was right and should be affirmed, and we will so order.

*Affirmed.*